ABRAHAM RUSSELL *vs.* CAROLINE-BECKER, INC. (and a companion case[1]).

Plymouth.    April 1, 1957. — June 4, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Trade Mark.    Trade Name.    Equity Pleading and Practice,* Declaratory proceeding, Decree, Costs.

In a suit in equity for a declaratory decree in which the final decree properly declared the rights of the parties in favor of the defendant but erroneously dismissed the bill and awarded costs to the plaintiff, the final decree was ordered modified by striking out the erroneous provisions and by awarding costs to the defendant. [163, 166]

A corporation engaged in the manufacture and sale of top lifts for shoes was, while it was in business, the owner of an unregistered trade name and trade mark which were originated and designed by one of its employees not in any business for himself and were used exclusively by it on its top lifts; and, upon the corporation making an assignment for the benefit of its creditors and discontinuing its business, one who purchased from the assignee the moulds and dies of the trade mark and adopted and used the trade name and trade mark for a substantial length of time acquired the exclusive right to use them and a right to restrain another corporation organized by the originator of the name and mark from using them in connection with the manufacture and sale of top lifts or as part of its corporate name. [165–166]

Two BILLS IN EQUITY, filed in the Superior Court on July 19, 1955, and August 1, 1955, respectively.

The suits were heard by *Hudson,* J., on a master's reports.

---

[1] Caroline-Becker, Inc. *vs.* Tuff Oak Top Lift Company, Inc.

*Harry J. Shapira*, for Russell and another.

*James H. Fitzgerald*, for Caroline-Becker, Inc.

COUNIHAN, J.   These are two suits in equity which were heard together.   They arise out of a controversy over the ownership and use of a trade name and trade mark known as "Tuff Oak" to describe a certain type of top lift or heel plate for men's shoes.

The plaintiff Russell in the first suit is the president and one of the principal stockholders in Tuff Oak Top Lift Company, Inc., hereinafter called Top Lift, a corporation manufacturing top lifts.   Top Lift is the defendant in the second suit.   Caroline-Becker, Inc., hereinafter called Becker, a corporation also engaged in the manufacture of top lifts and leather findings, is the defendant in the first suit and the plaintiff in the second suit.

The plaintiff in each suit alleges the exclusive ownership and right to use the trade name and trade mark of "Tuff Oak" in the manufacture and sale of top lifts.   This trade name and trade mark consisted of two crossed acorns with the word "Tuff" above them and the word "Oak" below. Each plaintiff alleges an infringement in the use of this trade name and trade mark.   Each sought a declaratory decree, injunctive relief and damages after an accounting.

The suits were referred to a master who after a hearing filed a single report.   Upon motion this was recommitted for further specific findings.   The master filed a supplemental report in which he made such findings.   The judge in each case denied a second motion to recommit and ordered the entry of an interlocutory decree overruling the exceptions of Russell and Top Lift and confirming the master's reports.

In the first suit a final decree was entered adjudging "1. That the plaintiff does not possess and has never had any property rights in the trade mark and trade name 'Tuff Oak.'   2. That the trade mark and the trade name 'Tuff Oak' and bearing the emblem of two crossed acorns are the property of the defendant who had the exclusive right to the use of the same in connection with the promotion,

manufacturing, selling and distribution of its top lift products bearing said trade mark and name. 3. That the plaintiff's bill of complaint be and is hereby dismissed." It awarded costs to the plaintiff. In the second suit a final decree was entered declaring that "the plaintiff corporation has the exclusive property in and to the trade name 'Tuff Oak' as applied to the manufacture and sale of top lifts." It also restrained the defendant in that case from using the words "Tuff Oak" in connection with any manufacture and sale of top lifts or as part of its corporate name. It awarded damages and costs to the plaintiff Becker. Russell and Top Lift each appealed from the interlocutory and final decrees.

Apparently through an inadvertence the final decree in the first suit dismissed the bill and awarded costs to the plaintiff. This was error because the first and second paragraphs of that decree declared the rights of the parties in the trade name and trade mark so that the bill should not have been dismissed. See *Foley* v. *Springfield,* 328 Mass. 59; *Jacobson* v. *Jacobson,* 334 Mass. 658, 662. Because the defendant prevailed it was entitled to costs rather than the plaintiff. These matters will be corrected in the manner suggested in the rescript. Outside of this there was no error.

The master found the following facts. In 1946 Russell was employed as a salesman by W. S. Jelly Inc., also known as W. S. Jelly Company, and hereinafter called Jelly. This was a corporation also engaged in the manufacture and sale of top lifts and leather "findings." He was clerk, assistant treasurer and a member of the board of directors of Jelly. In 1947 while so employed he originated and designed the trade name and trade mark of "Tuff Oak" hereinbefore described. Jelly paid all the expense of procuring the necessary moulds, dies and other equipment for producing the trade mark. During the period of his employment by Jelly, Russell acted solely as a salesman and was never a jobber or an independent agent in his own right. He never made an assignment of his rights, if any, in the trade name or trade mark to Jelly which used them exclusively in connection with the manufacture and sale of top lifts while it

was in business. Russell never registered the name or trade mark with Federal or State authorities. Becker knew of the trade name and mark for several years because it sold leather to Jelly.

On October 17, 1952, Jelly made an assignment for the benefit of its creditors of which Becker was one. Just before this Russell unsuccessfully tried to effect a merger between Jelly and Becker. After the assignment he talked with one Gersten, the president and general manager of Becker, about getting a job with Becker. It was orally agreed that if Gersten could purchase the moulds and dies of the trade mark at an auction sale to be held by the assignee of Jelly, he would bring them to Brockton and set up a separate division of Becker for the manufacture of "Tuff Oak" top lifts. In this event Gersten would give Russell a job as a salesman. Gersten through a straw on November 10, 1952, purchased the moulds and other equipment at the auction sale and paid for them with the money of Becker, which received a bill of sale for such goods from the assignee. Subsequent to the auction Jelly discontinued its business.

Shortly thereafter Russell went to work for Becker as a salesman to sell former accounts of Jelly and the "findings" trade generally and to provide service for them. On two occasions at least Russell endeavored to get Gersten to enter into a written agreement with him relative to the terms of his employment. This agreement contained a provision that Russell was the owner of the trade mark "Tuff Oak" which he agreed to permit Becker to use during the period of his employment. Gersten declined to execute any such agreement on behalf of Becker. Russell continued to work for Becker until December 24, 1953, when he was discharged.

From the time Becker acquired the moulds and dies of the trade mark it has carried on the manufacture of top lifts under the name of "Tuff Oak." Russell knew or should have known that it was doing so.

In December, 1954, Russell and others organized Top

Lift and began to manufacture and sell top lifts under the trade name of "Tuff Oak." As a result there was confusion in the "findings" trade on account of the use of "Tuff Oak" by both parties.

The appellants in attacking the decrees appealed from contend that Russell never assigned, transferred, waived or abandoned his rights in the use of the trade name and trade mark which he originated. They assert that he only lent the use of the name and trade mark during his employment by Jelly and later by Becker and that after the termination of Russell's employment he was free to resume their use to the exclusion of others in the absence of an express agreement to the contrary. They overlook, however, the real issue as to whether Russell ever acquired any property rights in the name and trade mark of "Tuff Oak" which he could sell or lend. The mere fact that he originated the name and trade mark did not, without more, confer a right in him to prevent their use by others. *Jenney Manuf. Co.* v. *Leader Filling Stations Corp.* 291 Mass. 394, 398, and cases cited. The right to a trade mark grows out of a use, not mere adoption. *Trade-Mark Cases,* 100 U. S. 82, 94. *Hanover Star Milling Co.* v. *Metcalf,* 240 U. S. 403, 413. A trade mark or trade name "can have no existence in gross, unconnected with some business in which it is used." *Jackman* v. *Calvert-Distillers Corp. of Massachusetts,* 306 Mass. 423, 426, and cases cited.

It is undisputed that Russell never was in business for himself either as a manufacturer or as a jobber. The situation in the cases at bar is not similar to one in which it might have appeared that the product was manufactured solely for Russell and in accordance with his directions. He did not hold himself to be responsible to purchasers as if he had been the manufacturer. *Nelson* v. *J. H. Winchell & Co.* 203 Mass. 75, 82.

We are of opinion that while it was in business Jelly was the owner of the "Tuff Oak" trade mark and that had Russell severed his connection with that corporation the name and trade mark would have continued to be the prop-

erty of Jelly. When it made the assignment for the benefit of creditors, the assignee acquired the name and trade mark. He later sold to Becker the moulds, dies and equipment used in the manufacture of the trade mark which inferentially carried with them the exclusive rights to use the name and trade mark. Moreover, by discontinuing doing business Jelly could have been found actually to have abandoned such rights. "In such a case the conditions are similar to those existing when one, having a trademark or trade name, abandons it, and leaves the name open to a future acquisition of rights in it, as if it never had been appropriated. There is no doubt that an abandonment paves the way for future possession and property in another person." *Cohen* v. *Nagle*, 190 Mass. 4, 11. This would appear to be the situation in the instant cases so that Becker, by adopting and using the name and trade mark of "Tuff Oak" for a substantial length of time before these suits were instituted, acquired the exclusive right to use them.

Becker is therefore entitled to an injunction restraining Top Lift from using the words "Tuff Oak" as a trade mark or part of its corporate name.

The appellant Russell has not argued the question of damages in the brief so we deem it to have been waived. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698.

It follows that in each case the interlocutory decrees are affirmed. In the first case the final decree is modified by striking out so much of the decree as ordered dismissal of the bill and awarded costs to the plaintiff, and by providing for costs to be awarded to Becker. As so modified both final decrees are affirmed with costs of these appeals to Becker.

*So ordered.*