DAUMIT STORES, INC. *v.* R. C. BROWN, d.b.a. "KAYBEE"

No. 43021          April 27, 1964          163 So. 2d 466

*Courtney & Echols,* Jackson, for appellant.

*Bernard W. N. Chill,* Jackson, for appellee.

Rodgers, J.

DeJay Stores, Inc. was doing a retail credit clothing business in the City of Jackson, Mississippi, under the trade name of "Kaybee". This corporation leased its store fixtures from the Booth Leasing Corporation. It assigned its notes and credit accounts receivable to James Talcott, Inc. for loans and advances to operate the business. The DeJay Stores went into involuntary bankruptcy on December 11, 1962. The New York Credit Men's Adjustment Bureau, Inc. was appointed Trustee in the bankruptcy proceedings, and, as Trustee, liquidated the stock of goods belonging to the bankrupt corporation, including the store in Jackson, Mississippi. Thereafter, the owner of the fixtures conveyed them to Harry Neider, the former manager of the Jackson Kaybee Store. He, in turn, on March 8, 1963, conveyed the fixtures to R. C. Brown. This conveyance included the neon sign of the trade name Kaybee and purported to sell "the use of the name Kaybee." On March 7, 1963, James Talcott, Inc. sold the accounts receivable to Daumit Stores, Inc. The latter corporation is doing business in Jackson on the Corner of Capitol and Amite Streets under the trade name of "Shaws." R. C. Brown rented the building under the neon sign Kaybee and opened a business under the trade name "New Kaybee." The Daumit Stores, Inc. put up a sign at their Shaws store notifying the public that "Attention Kaybee Stores' Customers your credit record is here, your account is established here" and "To Kaybee customers, your credit is good at Shaws." Thereafter, on March 22, 1963, the Referee in Bankruptcy authorized the Trustee, New York Credit Men's Adjustment Bureau, Inc., to execute a bill of sale to the Daumit Stores, Inc. The Trustee in Bankruptcy executed a bill of sale which

was also signed by James Talcott, Inc. to the Daumit Stores, Inc. covering "A.B.C." accounts receivable, ledger cards, sales contracts, notes and other records, and "all trade names, fictitious names and good will associated with said (No. 35) store." There was no new consideration paid, although the original sum paid the owner, James Talcott, Inc. was shown therein. The bill of sale was signed by the Trustee and James Talcott, Inc.

Thus, it is seen that R. C. Brown bought the fixtures and the Kaybee neon sign from the owner and went into business in the same building, using the trade name "New Kaybee." The owner of the fixtures had attempted to sell him the trade name Kaybee. On the other hand, the Daumit Stores had purchased the accounts receivable belonging to James Talcott, Inc. and had not used the Kaybee trade name, except to direct the attention of the Kaybee customers to pay accounts at Shaws Credit Department Store. Neither of these parties had purchased any assets of the bankrupt from the Trustee in Bankruptcy.

After having obtained the bill of sale from the Trustee in Bankruptcy, the Daumit Stores filed this suit against R. C. Brown. The case was tried, and at the close of the evidence for the complainant (appellant here), R. C. Brown made a motion for a decree on the testimony of the complainant. The chancellor sustained the motion and granted a decree dismissing the original bill.

We have reached the conclusion that the chancellor was correct in dismissing the complainant's original bill and denying the relief sought, for the reasons hereinafter set out.

I

There are several assignments of error presented to this Court by the brief of appellant, but the real issue is whether or not "the Chancery Court erred in

refusing to enjoin appellee from the use of the trade name Kaybee,'' because, it is said, the appellant had become the owner thereof by virtue of a bill of sale from the Trustee in Bankruptcy.

██ █ Appellant argues, and we agree, that the trustee in a bankruptcy proceeding takes the title to all nonpersonal trade names which have been previously acquired by the business. This rule is stated in 8 C. J. S., Bankruptcy, §181, p. 951, that ''Under a specific provision of Bankruptcy Act §70 a (2), 11 U. S. C. A. §110 a (2) the trustee takes title to all interests of the bankrupt in patents and patent rights, trade-marks, and copyrights, and in applications therefor. * * * A nonpersonal trade name, lawfully identified with the business of the bankrupt at the time of his adjudication, passes to the trustee as an asset of the bankrupt's estate.''

██ █ One of the leading cases seems to be that of Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A. L. R. 698. The Court said: ''In this case, the physical assets, including the fixtures, were purchased as an entirety by the appellee, Sutker, the sale being made, as advertised, at the bankrupt's former business location. In addition to the entire physical assets, the trustee expressly sold, and by the bill of sale in terms conveyed to the purchaser, the good will and trade-name identified with the bankrupt's former business, which sale was confirmed by the referee in bankruptcy, in an order expressly reciting the sale of the good will and trade-name, and such sale was subsequently approved by the United States District Court, Southern District of Florida, in which the matter was pending.'' The Court then held that the bankrupt, as an individual, by his adjudication in bankruptcy, was divested of all interests in or right to the use of the trade name in question, and that the appellee, Sutker, acquired the former right of the owner to the exclusive use of the trade name in connection with the business with which

it was identified. This rule has now been accepted generally, as will be seen from the Annotation in 44 A. L. R. 706. See also Sunseald Products, Inc. v. Domino Canning Association, 147 Fla. 700, 3 So. 2d 377. See Reconstruction Finance Corporation v. J. G. Menihan Corporation, 22 Fed. Supp. 180; 9 Am. Jur. 2d, Bankruptcy, §884, p. 665; 9 Am. Jur. 2d, Bankruptcy, §1222, p. 901; Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645; United States Ozone Company v. United States Ozone Company of America, 62 Fed. 2d 881.

■■ ■ We also agree with the contention of the appellant that a trade name of a bankrupt business may pass to the purchaser of the bankrupt business, where the business is sold intact by the trustee. This rule is pointed out in the Ozone, Sutker and Sunsealed cases above-mentioned. On the other hand, it has been accepted as a general rule that the right to use the trademark or trade name cannot be sold or transferred alone, but must be accompanied by the other assets of the business. See Anno. II, 44 A. L. R. 710. This rule has been applied to a sale by assignee in bankruptcy or insolvency and has been held that, if the assignee attempts to separate the trademark or trade name from the other assets of the insolvency, and to sell it separately, nothing passes by the attempted sale. Anno. II, 44 A.L.R. 710.

In the case of Hanover Star Milling Company v. Metcalf, 240 U.S. 403, the Court pointed out that in cases involving unregistered trademarks, the use of such trademarks must be determined according to the applicable common-law principles. The Court said: "Common-law trade-marks, and the right to their exclusive use, are of course to be classed among property rights, *Trade-mark Cases*, 100 U.S. 82, 92, 93; but only in the sense that a man's right to the continued enjoyment of his trade reputation and the good-will that

flows from it, free from unwarranted interference by others, is a property right, for the protection of which a trademark is an instrumentality. As was said in the same case, the right grows out of use, not mere adoption. In the English courts it often has been said that there is no property whatever in a trade-mark, as such.'' The Court then pointed out that courts recognize the rights of parties to the exclusive use of marks adopted to indicate goods of his manufacture, upon the ground that '' 'A man is not to sell his own goods under the pretense that they are the goods of another man; he cannot be permitted to practice such a deception, nor to use the means which contribute to that end. He cannot therefore be allowed to use names, marks, letters, or other indicia, by which he may induce purchasers to believe, that the goods which he is selling are the manufacture of another person'; it is plain that in denying the right of property in a trade-mark it was intended only to deny such property right except as appurtenant to an established business or trade in connection with which the mark is used.''

The Court said in United Drug Company v. Theodore Rectanus Company, 248 U. S. 90, at p. 97: ''There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.''

▮▮ ▮ The evidence in this case establishes that no additional consideration was paid the Trustee in Bankruptcy for the trade name Kaybee. Moreover, the trade

name was not sold to appellant by the Trustee as part of the bankrupt stock. The Daumit Stores, Inc. owned the accounts receivable since it purchased them from the owner, James Talcott, Inc. prior to the time the Trustee made the bill of sale. It is obvious that the naked trade name ''Kaybee'' was a shadow of the former business and had no value except as a part of the business. The sale of the trade name to Daumit Stores, Inc. was invalid and void for three reasons: (1) After the sale of the stock of goods and other assets of the store No. 35, the Trustee had no power to make a separate sale of the naked unregistered trade name. In addition to the cases cited above, see Sawilowsky v. Brown, 288 F. 533 (CCA Fla.); Ewing v. Marmon Realty Co., 29 Ohio App. 248, 163 N. E. 509; In re Jaysee Corset Co., 201 Fed. 779; 87 C. J. S., Trademarks, §174, p. 508. (2) James Talcott, Inc. never owned the trade name and its signature on the bill of sale did not convey any property since it had previously conveyed all it owned to the Daumit Stores, Inc. (3) The bill of sale from the Trustee to the Daumit Stores conveyed nothing and had no consideration.

█ █ A sale by a trustee in bankruptcy is like any other sale and must meet the requirement that there must be something to sell, that is to say, an asset of the bankrupt property, and there must be a consideration paid for such property. It is obvious that the Trustee in Bankruptcy could not give away the assets of the creditors. █ █ The Trustee in Bankruptcy owes a duty to all concerned to preserve the assets of the bankrupt estate, and in liquidation to secure as much for such assets as possible. Leventhal v. Ollie Morris Equipment Corporation, 7 Cal. Rptr. 911.

█ █ It might be well to point out here that the right to a trademark grows out of its use, not from mere adoption, and the fact that one originated an unregistered trademark does not confer a right upon him to prevent

its use by others. See Russell v. Caroline-Becker, Inc., 142 N.E. 2d 899 (Mass. 1957); Leventhal v. Ollie Morris Equipment Corporation, 7 Cal. Rptr. 911.

For the reasons above set out, we are of the opinion that the chancellor was correct in dismissing the original bill. The decree of the chancery court will therefore be affirmed.

Affirmed.

*Kyle, P. J., and Gillespie, McElroy and Patterson, JJ.,* concur.