430 P.2d 574

Richard C. PEEPLES, Plaintiff and Respondent,

v.

Elliott WOLFE, Richard L. McGillis and Wolfe's Sportsman's Headquarters, a co-partnership, Defendants and Appellants.

No. 10537.

Supreme Court of Utah.

July 25, 1967.

Neslen & Mock, Clarence C. Neslen and Kent Shearer, Salt Lake City, for appellants.

William G. Fowler, Salt Lake City, for respondent.

CALLISTER, Justice.

This is an action instituted by plaintiff, *Richard* Peeples, to enjoin defendants' use of the trade name "Al's Sporting Goods." Plaintiff was the sole proprietor of a retail business known as "Al's Sporting Goods,"[1] which sold merchandise for sportsmen and repaired equipment. The facilities of the last business location were adapted to these business activities.

On June 22, 1965, plaintiff made a general assignment for the benefit of creditors to Intermountain Association of Credit Men. The assignee circulated a notice of sale, and defendants submitted a bid for the merchandise, inventory and fixtures of "Al's Sporting Goods." Defendants were the successful bidders, and the assignee delivered a bill of sale to all furniture, fixtures and merchandise, and the key to the business location to them.

When defendants took possession of the location, in addition to the merchandise and inventory, there remained the sales tickets, envelopes, paper sacks and other printed items used to operate a place of business, as well as trade-mark forms used for advertising purposes. Defendants used these items and the cash register, a part of the fixtures, which printed on each cash slip the trade name, "Al's Sporting Goods." Also imprinted with the trade name were purchase agreements, ski wax, and metal and cloth labels.

On July 20, 1965, plaintiff demanded that defendants cease their use of the trade name, "Al's Sporting Goods," claiming it was not intended that such trade name be included within the assignment for the benefit of creditors. On July 28, 1965, Intermountain quitclaimed all of the right, title and interest which it might have acquired to the trade name to defendants.

1. Formerly owned and operated by his father-in-law, Al.

The trial court held that defendants' use of the trade name, "Al's Sporting Goods," was wrongful and unlawful and was not acquired by them when they purchased the merchandise, inventory, furniture, and fixtures. It further held that the purported transfer of the trade name was ineffectual and defendants acquired no interest by virtue of such transfer. The trial court permanently enjoined defendants' use of the trade name and reserved the matter of damages for further consideration.

Title 6 of the Utah Code Annotated contains the statutory provisions for assignment for the benefit of creditors. Section 6-1-3, U.C.A.1953, provides:

> * * * such assignment shall vest in the assignee the title *to any other property* belonging to the debtor at the time of making the assignment, except property exempt from execution and insurance upon the life of the assignor, * *. (Emphasis added.)

In Children's Bootery v. Sutker,[2] the controlling legal principles of this case were stated:

> A trade-name exists as an incident of the business in which it was lawfully acquired, and with which it remains identified. * * *

> Because of these peculiar qualities which inhere in trade-marks and trade-names as property, it has been held by the courts, with great uniformity, and perhaps may now be said to be the general rule, that, in a voluntary sale of business as an entirety, trade-marks and trade-names which have been lawfully established and identified with such business will pass to one who purchases as a whole the physical assets or elements of the business, even though not specifically mentioned in the conveyance. [Citations omitted.] Where the trade-name involved is not in law a personal one, the courts have so far made no material distinction in this respect between a voluntary sale, and one by operation of law through bankruptcy or a general assignment for the benefit of creditors, holding in such instances that, although not specifically mentioned in the proceedings, the trade-marks or trade-names lawfully identified with the business of the insolvent pass to his trustee and thence to one who purchases the business substantially as a whole. [Citations omitted.] Where, however, the name involved is one which is in law a personal name, and the transfer thereof is by operation of law or through judicial proceedings, a limitation exists upon the future use thereof by the purchaser to the exclusion of the person whose individual name it is. [Citations omitted.] But the trade-name now un-

2. 91 Fla. 60, 107 So. 345, 44 A.L.R. 698, 702, 703 (1926).

der consideration is not a personal one, and we are not here concerned with such limitation.

In the instant case the trade name, "Al's Sporting Goods," is not a personal one and therefore does not fall within the foregoing limitation to the general rule.

\* \* \* The fact that a tradename or trademark consists in whole or in part of the name of a person does not necessarily prevent it from being transferable. [Citations omitted.] If it has come to signify a particular grade or variety of goods, and not that they are the product of the skill of the person, such mark or name will be considered as an asset and will pass on an assignment in bankruptcy or insolvency.[3]

In the instant case, the trade name, "Al's Sporting Goods," was only the symbol of a business; it was property and divorced from the business or its good will, it was meaningless.[4] Under Section 6–1–3, U.C.A. 1953, plaintiff's general assignment for the benefit of creditors vested in the assignee his property including the trade name which existed as an incident of the business in which it was lawfully acquired and remained identified. We therefore hold that under these circumstances the trade name

constituted a part of the assets of plaintiff, and the right to use it passed on the general assignment, even though it was not specifically mentioned therein. Defendants, through the purchase as a whole of the physical assets or elements of the business from the assignee acquired the right to use the trade name "Al's Sporting Goods."[5]

Reversed. Costs to appellants.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

3. 44 A.L.R., Anno., Trademark or Tradenames Asset, pp. 706, 713.
4. Callman Unfair Competition and Trademarks (2nd Ed.), Sec. 78.5(a), p. 1332.
5. See 6 Am.Jr.2d Assignment For Benefit of Creditors, Sec. 25, pp. 340, 341; Daumit Stores, Inc. v. Brown, 249 Miss. 528,

163 So.2d 466 (1964); Leventhal v. Ollie Morris Equipment Corp., 184 Cal.App. 2d 553, 7 Cal.Rptr. 911, 914 (1960); 3 Callman Unfair Competition and Trade-Marks, 2nd Ed., Sec. 78.3(b), p. 1315; 44 A.L.R., Anno., Sec. 1, p. 706.