2002 ME 6

## THE KNOWLES COMPANY

v.

## NORTHEAST HARBOR INSURERS.

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2001.

Decided: Jan. 8, 2002.

Peter R. Roy (orally), Roy, Beardsley, Williams & Granger, LLC, Ellsworth, for plaintiff.

William N. Ferm (orally), Ross & Ferm, LLC, Ellsworth, for defendant.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.*

RUDMAN, J.

[¶ 1] The Knowles Company appeals from a judgment entered in the Superior Court (Hancock County, *Marsano, J.*) in favor of Northeast Harbor Insurers. The court found that Northeast Harbor Insurers did not misappropriate the Knowles name when it registered to do business under the assumed name "Knowles Company–Insurance." Because the Superior Court erroneously determined that the name "Knowles" was abandoned, we vacate its judgment.

* Wathen, C.J., participated in the initial conference but resigned before this opinion was adopted.

## I. CASE HISTORY

[¶ 2] In 1902, L. Belle Smallidge Knowles started a real estate business in Northeast Harbor. Over time the business grew to include insurance and real estate appraisal divisions and in 1949, it was incorporated under the laws of Maine as "The Knowles Company." In 1958, Robert Suminsby married the granddaughter of Ms. Smallidge Knowles. Shortly thereafter he began work for The Knowles Company. He would later become the last managing owner of this family business.

[¶ 3] In 1988, Suminsby sold the insurance arm of the business to one of his business associates, Jack Wright. To complete this sale, Suminsby transferred all of the capital stock of The Knowles Company to Wright and repurchased from the corporation the assets of the corporation's real estate and appraisal businesses. Subsequent to this transaction, both Wright and Suminsby used the word "Knowles" in the names of their respective businesses. Wright changed the name of the corporation to the "Knowles Corporation" and continued in the insurance business. Suminsby continued to operate his real estate and appraisal sole proprietorship as "The Knowles Company."

[¶ 4] In 1989, Suminsby sought to reacquire the exclusive right to the name. Apparently Wright had started to construct a building which encroached onto a small piece of Suminsby's land. In exchange for this land, Wright promised to phase the word "Knowles" out of his corporation's name. This agreement was intended to be binding on the parties and "their heirs, legal representatives, successors and assigns." Pursuant to this agreement Wright changed the name of his corporation to "J.B. Wright Co."

[¶ 5] Eventually the business of J.B. Wright Co. was acquired by one Priscilla Granston. Although the record is unclear as to its terms and conditions, Ms. Granston's corporation, Northeast Harbor Insurers (NHI), acquired the original Knowles insurance accounts. The record is also unclear as to the origins of NHI, specifically when it was formed and what name it originally operated under.

[¶ 6] On January 10, 1992, Suminsby rented space to NHI in the same building that housed his real estate business. The term of the lease was five years with an option to renew for an additional five years. The lease also explicitly provided a section concerning use of the Knowles name;

17) USE OF TRADE NAME:

a) During the term of this lease and any renewal thereof, the Lessee may use the name "The Knowles Company–Insurance" and its logo, as a trade name, without any additional payment.

b) The Lessee has requested the option to purchase from the Lessor the perpetual right to use this name at a price of $5,000.00 per year for a period of ten (10) years beginning at the expiration of this lease. The Lessor agrees to consider this request and to notify the Lessee of his acceptance by December 31, 1994.

[¶ 7] The lease provided for a common receptionist between the two businesses. Therefore, customers of both the real estate and insurance businesses would dial the same phone number and the receptionist would route the call accordingly. The two businesses also shared the same mailing address.

[¶ 8] Suminsby was unaware that on January 6, 1992, NHI registered with the Secretary of State to do business under the name "Knowles Company–Insur-

ance." [1]  At the time there was no other corporation registered under the Knowles name, nor was there any insurance business that used the Knowles name.

[¶ 9] In 1993, Suminsby engaged in negotiations to sell his real estate sole proprietorship to three of his brokers, Maria Brown, Pepper Keating, and Harriet Whittington. The three brokers formed the corporation T.K.C., Inc. to acquire Suminsby's business. The sale was finally concluded in February 1994. Suminsby transferred the assets of his business by two bills of sale, the first for the personal property transferred, and the second for the rights to the Knowles name. Shortly after the purchase, T.K.C. Inc. registered to do business under the name "The Knowles Company," and eventually made that name its official corporate name.

[¶ 10] In December 1996, due to a falling out between the parties, NHI moved out of The Knowles Company building to a new location a few blocks away. Although it stopped using the Knowles logo, NHI continued to do business under the name "Knowles Company–Insurance" without the permission of The Knowles Company. Furthermore, NHI ran advertisements that stated it had one hundred years of experience. NHI has admitted that it continues to use the name because it wants to associate itself with the long tradition of the Knowles family.

[¶ 11] In February 1997, The Knowles Company brought suit against NHI seeking, *inter alia*, to enjoin it from further use of the Knowles name. After a bench trial, the Superior Court entered judgment for NHI. The court found that "[s]omehow, Mr. Suminsby lost his legal right to 'Knowles Insurance.'" The court went on to state that NHI "determined that it

could approach the State of Maine and secure a right valuable to it which it could do under Maine law. It violated no law in so doing and used the Knowles name as it had a right to do." Thus, the court's opinion is based upon the premise that Suminsby effectively abandoned the name "Knowles" and, therefore, surrendered the exclusive right to use the Knowles family name. The Knowles Company filed this appeal.

## II. DISCUSSION

[¶ 12] Whether Suminsby "lost control" of the Knowles name is a factual determination which we review for clear error. *Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478, 480 (Me. 1989). We note at the outset that there is no Maine precedent concerning the abandonment of trade names. Nevertheless, the Massachusetts Supreme Judicial Court has stated that "[t]here is no doubt that an abandonment paves the way for future possession and property in another person." *Russell v. Caroline–Becker, Inc.*, 336 Mass. 161, 142 N.E.2d 899, 902 (1957). But "[t]o constitute abandonment there must be satisfactory evidence of definite acts ... which indicate an actual intention permanently to give up the use of the trade-mark." *Neva–Wet Corp. v. Never Wet Processing Corp.*, 277 N.Y. 163, 13 N.E.2d 755, 760 (1938). Furthermore, the Restatement of the Law of Unfair Competition states that a trade name is abandoned if:

(a) the party asserting rights in the designation has ceased to use the designation with an intent not to resume use; or

(b) the designation has lost its significance as a trademark, trade name, col-

---

1.  13–A M.R.S.A. § 307(2) provides that "[u]pon complying with this section, any corporation authorized to do business in this

State may transact its business in this State under one or more assumed names." *Id.*

lective mark, or certification mark as a result of a cessation of use or other acts or omissions by the party asserting rights in the designation.

Restatement (Third) of Unfair Competition § 30 (1995).

[¶ 13] Thus the issue becomes whether Suminsby actually intended to abandon his rights to the name. The facts clearly indicate that the answer to this question is no. Although Suminsby transferred the capital stock in the original The Knowles Company to Wright, he continued to use the name and sought to reacquire the exclusive right to it. Furthermore, when NHI entered into a licensing agreement for the right to use the Knowles name NHI acknowledged that Suminsby controlled it. Why would NHI enter into such an arrangement and indeed even offer to buy the rights to the Knowles name if they thought it was free for the taking? Certainly Suminsby could have taken additional precautions to protect the Knowles name. The record, however, does not support the conclusion that he "lost control" of it. The record is devoid of evidence that Suminsby intended to abandon the name. Nor has the name lost its significance. The current owners of NHI have admitted that they use the name in order to associate themselves with the long history and tradition of the original Knowles Company.

▮ [¶ 14] NHI argues, and the trial court concluded, that NHI gained the right to use the Knowles name by virtue of its registration with the Secretary of State. Title 13–A of the Maine Revised Statutes explicitly states that the use of an assumed name may be enjoined if that name "is deceptively similar to a name in which the plaintiff has prior rights by virtue of the common law or statutory law of unfair competition, unfair trade practices ...." 13–A M.R.S.A. § 307(6)(B) (1981). Suminsby had prior common law rights to the name and thus NHI did not acquire any superseding rights when it registered with the Secretary of State. Whether NHI's use of the Knowles name entitles The Knowles Company to redress depends upon whether NHI has infringed upon those common law rights. The Superior Court also determined, *inter alia,* that The Knowles Company had no intention of ever re-entering the insurance business and that NHI's use of the Knowles name did not harm the business reputation of The Knowles Company. The court should have focused upon whether NHI attempted "to palm off [its] own goods or products as the goods or products of another." *Lapointe Machine Tool Co. v. J.N. Lapointe Co.,* 115 Me. 472, 478, 99 A. 348, 351 (1916).

The entry is:

Judgment vacated. Remanded to the Superior Court for proceedings consistent with this opinion.