STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. RE-20-46



SOLEY WHARF LLC,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        ORDER ON DEFENDANTS' MOTION
                                   )        FOR SUMMARY JUDGMENT
PROPRIETORS OF PORTLAND PIER,      )
CORPORATION OF THE                 )
PROPRIETORS OF PORTLAND PIER,      )
and MARY GREEN BARTHELMAN          )
                                   )
        Defendants.                )


Before the Court is Defendant City of Portland's (the "City") Motion for Summary

Judgment. For the reasons set forth herein, the motion is DENIED.

## FACTUAL BACKGROUND

This case concerns the ownership of a section of alleyway between Portland Pier and

Custom House Wharf and behind a block of buildings known as the "Thomas Block" building.

The plaintiff in this case, Soley Wharf LLC ("Soley Wharf"), holds record title to the property on

which Thomas Block building sits and the easterly 3/8 of the alleyway. (Def. S.M.F. ¶¶ 27-28.)

The question is who owns the other 5/8 of the alleyway (the "Westerly 5/8 of the Passageway").

The parties agree that in 1857, the Westerly 5/8 of the Passageway was owned by a corporation

known as the Proprietors of Portland Pier (the "PPP"). (Def. S.M.F. ¶ 12.) The PPP has since

dissolved, and the parties disagree as to what became of its interest. (Def. S.M.F. ¶ 30; Pl. S.A.M.F.

¶ 13a.) Soley Wharf now claims ownership of the Westerly 5/8 of the Passageway by adverse

possession. The City claims fee ownership through a chain of title allegedly dating back to the

PPP.

REC'D CUMB CLERKS OFC
MAR 29 '23 PM 1:18

Soley Wharf's Complaint was docketed on April 24, 2020. It names Proprietors of Portland Pier, Corporation of the Proprietors of Portland Pier, and Mary Barthelman as defendants and alleges two causes of action: count I, adverse possession; and count II, quiet title. Mary Barthelman was dismissed from the case on February 19, 2021, after transferring any interest she may have had in the Westerly 5/8 of the Passageway to the City by way of a quitclaim deed without covenant. On June 15, 2021, the City filed an answer and counterclaim, alleging fee ownership. On July 5, 2022, the City moved for summary judgment on its claim of fee ownership and both counts of Soley Wharf's Complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when review of the parties' statements of material fact and the record evidence to which they refer, considered in the light most favorable to the nonmoving party, indicates that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Remmes v. The Mark Travel Corp.*, 2015 ME 63, ¶ 18, 116 A.3d 466. A fact is material if it has the capacity to affect the outcome of the case. *Lewis v. Concord General Mut. Ins. Co.*, 2014 ME 34, ¶ 10, 87 A.3d 732. An issue is genuine if the factfinder must choose between competing versions of the truth. *Id.* Summary judgment is not a substitute for a trial. *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123.

## DISCUSSION

### I.      Fee Ownership

The City argues that it is entitled to an affirmative declaration that it has fee ownership of the Westerly 5/8 of the Passageway. The City asserts that ownership flowed through the following chain: the PPP retained its interest in the Westerly 5/8 of the Passageway until 1961, when all of

2

PPP's stock was transferred to Percival Baxter ("Baxter"); the interest transferred again when Governor Baxter gifted all of PPP's stock to the State of Maine; and, finally, the State transferred its interest in the Westerly 5/8 of the Passageway to the City by deed on June 2, 2021. Soley Wharf argues that the City is not entitled to summary judgment because material facts remain in dispute as to PPP's intent at the time of the conveyances and as to the City's chain of title. The Court's analysis will begin with construction of the relevant deeds.

## A.    *Construction of the Deeds*

Construction of a deed is a matter of law for the court. *Almeder v. Town of Kennebunkport*, 2019 ME 151, ¶ 28, 217 A.3d 1111. "The first step in any analysis of the language in a deed is to give words their general and ordinary meaning to see if they create any ambiguity." *Gravison v. Fisher*, 2016 ME 35, ¶ 39, 134 A.3d 857 (quoting *Green v. Lawrence*, 2005 ME 90, ¶ 7, 877 A.2d 1079). "If the deed is unambiguous, the court must construe the deed without considering extrinsic evidence; if the deed is ambiguous, however, the court may admit extrinsic evidence of the parties' intent." *N. Sebago Shores, LLC v. Mazzaglia*, 2007 ME 81, ¶ 13, 926 A.2d 728. "Language is deemed ambiguous when it is reasonably susceptible to different interpretations." *Doyon v. Fantini*, 2020 ME 77, ¶ 7, 234 A.3d 1222.

The language of Soley Wharf's deed is unambiguous. It conveys to Soley Wharf the property on which the Thomas Block building is located and the Easterly 3/8 of the Passageway. It does not convey the Westerly 5/8 of the Passageway. Soley Wharf argues that the Court may still find that it has good title by deed, on the basis that the PPP did not intend to retain its interest in the Westerly 5/8 of the Passageway, but rather to create a "common area" behind the Thomas Block building, where the abutting landowners would collectively control the entire passageway. Because the deed is unambiguous, the Court cannot speculate as to the PPP's intent. *Sleeper v.*

3

*Loring*, 2013 ME 112, ¶ 16, 83 A.3d 769 ("When interpreting a deed whose terms are not ambiguous, we do not speculate about the grantors' actual or probable objectives; rather, we focus on what is expressed within the four corners of the deed.").

Soley Wharf argues that the Court may consider extrinsic evidence in this case on the basis that a latent ambiguity exists in its deed. "A latent ambiguity in a deed is created when, in applying the description to the ground, facts extrinsic to the document controvert or in some way render unclear the deed's apparently unambiguous terms." *Harvey v. Furrow*, 2014 ME 149, ¶ 8, 107 A.3d 604 (quoting *Milligan v. Milligan*, 624 A.2d 474, 477 (Me. 1993)); *see Taylor v. Hanson*, 541 A.2d 155, 157 (Me. 1988) (latent ambiguity where two roads described as parallel in a deed were "not parallel on the face of the earth"). No latent ambiguity has been presented in this case. Soley Wharf has not argued that the legal description of the property in its deed, when applied to the ground, renders any of the terms of the deed unclear. Rather, Soley Wharf argues that it would make more sense for the PPP to have intended for the abutters to hold the entire passageway in common ownership than it would for the PPP to have intended to retain title to the Westerly 5/8 of the Passageway. Whether that is true or not, it does not create a latent ambiguity.

**B.      Chain of Title**

The City's primary argument is that it holds fee ownership of the Westerly 5/8 of the Passageway based on the above chain of title, originating with the PPP. The City presents evidence that Governor Baxter had possession of the PPP stock in 1961 and that he gifted the stock to the State. Soley Wharf argues that even if the PPP did retain title to the Westerly 5/8 of the Passageway (1) there is no evidence in the record of how Governor Baxter acquired PPP's stock or assets, and (2) any interest Governor Baxter may have had was not effectively gifted to the State. To support

4

the latter argument, Soley Wharf presents an inventory of PPP's assets from December 31, 1960.[1] The inventory lists cash, bonds, and stocks, but does not list any real property. Soley Wharf argues that if Governor Baxter was unaware that he had acquired an ownership interest in the Westerly 5/8 of the Passageway, he could not have had the requisite intent to gift that interest. *Westleigh v. Conger*, 2000 ME 134, ¶ 7, 755 A.2d 518 (an effective gift requires intent, delivery, and acceptance).

Generally, a transfer of all of the stock of a corporation also transfers ownership of the corporations other assets. *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011) ("In the context of a stock sale agreement, the law presumes that all assets and liabilities transfer with the stock."); *Brodsky v. Frank*, 342 Ill. 110, 173 N.E. 775, 777 (1930) ("The sale of all of the stock of a corporation is, in legal effect, a sale of all of its assets."); *Big Lots Stores, Inc. v. KB Acquisition Corp.*, 340 B.R. 726, 728 (D. Del. 2006) ("it is a general principle of corporate law that all assets and liabilities are transferred in the sale of a company effected by a sale of stock"); *see also Knowles Co. v. Ne. Harbor Insurers*, 2002 ME 6, ¶ 3, 788 A.2d 587 (plaintiff repurchased certain corporate assets after those assets transferred to new ownership through a sale of all of the company's stock).

Thus, if Governor Baxter did obtain ownership of the Westerly 5/8 of the Passageway, that interest could have transferred to the State, even if both parties were unaware of the interest. *SCI Minn. Funeral Servs., Inc.*, 795 N.W.2d at 857-859 (two vacant lots transferred in a stock sale even though none of the parties were aware of the existence of the vacant lots). The relevant intent is the intent to transfer the stock. However, Soley Wharf is correct that there is a missing link in the

---

[1] In its Reply, the City argues that the inventory is inadmissible. The Superior Court (Cumberland County, *Murphy, J.*) allowed a sur-reply from Soley Wharf to respond to the evidentiary issue. The Court may consider the document because it is an ancient document and because it is not offered for the truth of the matter asserted.

chain of title from the PPP to Governor Baxter. This missing link creates a genuine issue of material fact and makes summary judgment inappropriate. *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 756 (Me. 1976); *Ouellette v. Daigle*, 219 A.2d 545, 548 (Me. 1966).

Accordingly, summary judgment is denied as to Count I of the City's Counterclaim.

## II.    Adverse Possession

Adverse possession presents a mixed question of fact and law. *Grondin v. Hanscom*, 2014 ME 148, ¶ 13, 106 A.3d 1150. "[W]hether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law for the court to decide." *Dombkowski v. Ferland*, 2006 ME 24, ¶ 28, 893 A.2d 599. A party claiming title by adverse possession must prove by a preponderance of the evidence that their possession and use of the property was: "(1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234.

The City argues that Soley Wharf's adverse possession claim fails as a matter of law because title to the Westerly 5/8 of the Passageway has been held by a sovereign[2] for the entirety of Soley Wharf's use, and because Soley Wharf cannot prove it has met all eight elements of adverse possession for the twenty-year limitations period. As discussed above, material facts remain in dispute as to whether a sovereign now holds or has ever held fee ownership to the Westerly 5/8 of the Passageway. The Court will thus turn to a discussion of the elements of adverse possession.

---

[2] "A person cannot obtain title by adverse possession against the government 'absent express statutory authorization.'" *Sandmaier v. Tahoe Dev. Group*, 2005 ME 126, ¶ 9, 887 A.2d 517 (quoting *Loavenbruck v. Rohrbach*, 2002 ME 73, ¶ 12, 795 A.2d 90).

6

Generally, on a defendant's motion for summary judgment, a plaintiff claiming title by adverse possession has the burden to make out a prima facie case as to every element. *Levis v. Konitzky*, 2016 ME 167, ¶ 21, 151 A.3d 20. This is a low standard, requiring only some evidence on each element, the reliability and credibility of which "may be considered at some later time in the process." *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 11, 143 A.3d 788 (quoting *Nader v. Me. Democratic Party*, 2012 ME 57, ¶ 34, 41 A.3d 551). In certain instances, a plaintiff may satisfy their burden simply by "putting forth prima facie evidence that establishes a genuine dispute of material fact as to only those elements that are challenged by a defendant's factual or legal argument." *Boivin v. Somatex, Inc.*, 2022 ME 44, ¶ 10 n.2, 279 A.3d 393. Here, although the City contends that Soley Wharf cannot meet any of the eight elements, the bulk of its argument relates to whether Soley Wharf's possession has been "actual" and "exclusive."

### A. Actual and Exclusive

"Actual possession" means "physical occupancy or control over property." *Black's Law Dictionary* 1282 (9th ed. 2009). "Actual possession" is "manifested by acts of occupancy that indicate a present ability to control the land and an intent to exclude others from such control." *Striefel v. Charles-Keyt-Leaman P'ship*, 1999 ME 111, ¶ 9, 733 A.2d 984 (quoting *Flowers v. Roberts*, 979 S.W.2d 465, 469 (Mo. Ct. App. 1998). To determine whether an adverse possession claimant "actually" possessed the land, the court considers "the nature and location of the property, the potential uses of the property, and the kind and degree of use and enjoyment to be expected of the average owner of such a property." *Striefel*, 1999 ME 111, ¶ 9, 733 A.2d 984. "Exclusive possession" means that the adverse possession claimant "is not sharing the disputed property with the true owner or public at large." *Id.* ¶ 17. Use of the land by the public will not defeat a claim of

adverse possession if the use is permissive, casual, or of a different kind than that of the adverse possession claimant. 3 Am. Jur. 2d *Adverse Possession* § 66 (2023).

The City has submitted the deposition testimony of two lobstermen, Keith Lane and Willis Spear, who claim to have used the passageway for decades to load and unload lobster traps and do other marine activities. The City argues that because of this use by the lobstermen, Soley Wharf's possession of the passageway has not been "actual" or "exclusive." Soley Wharf has submitted the affidavit of Tim Soley, the manager of Soley Wharf, who alleges that he has worked full-time in an office overlooking the passageway for more than twenty years and has rarely seen any lobstermen using the passageway. Tim Soley claims that Soley Wharf has used the passageway since 1998 to access rear building doors, park vehicles, store trash receptacles, erect scaffolding, and perform maintenance. He further claims that Soley Wharf has posted and enforced "no parking" signs in the passageway since 1998. Tim Soley's affidavit presents evidence that is demonstrative of an ability to control the passageway and an intent to exclude others from such control.

### B.    Open, Visible, and Notorious

"Open" means without attempt to conceal. *Striefel*, 1999 ME 111, ¶ 11, 733 A.2d 984. "Visible" means capable of being seen by those who view the property. *Id.* "Notorious" means known to those who may "reasonably be expected to communicate their knowledge to an owner maintaining a degree of supervision over [their] property." *Id.* These three elements exist to provide notice to the true owner that their rights are in jeopardy. *Id.* In this context, "notice need not be actual; it is sufficient to prove acts so open, visible, and notorious that the owner's knowledge of them and of their adverse character may be presumed." *Id.* (quoting *Emerson v. Me. Rural Missions Ass'n*, 560 A.2d 1, 3 (Me. 1989)).

8

The City argues that the general use of the passageway by the lobstermen and the public necessarily precludes a finding that Soley Wharf's possession has been "open," "visible,"[3] and "notorious." The Court disagrees. The record indicates that Soley Wharf has made no attempts to hide its use of the passageway. Rather, Soley Wharf presents evidence that it has, for over twenty years, openly used the passageway for rear access, parking, storage, and maintenance, and has posted and enforced "no parking" signs in the passageway.

## C.    Hostile, Under a Claim of Right, and Continuous

"Hostile" means without permission from the true owner. *Striefel*, 1999 ME 111, ¶ 13, 733 A.2d 984. "Under a claim of right" means that the claimant is in possession of the property as an owner, "with intent to claim the land...and not in recognition of or subordination to [the] record title owner." *Id.* ¶ 14 (citing Black's Law Dictionary 248 (6th ed. 1990). "Continuous" means that that the claimant has possessed the property in the way an average owner would without interruption. *Id.* ¶ 16. The City argues that the facts of this case undercut any assertion that Soley Wharf's use of the passageway has been "hostile," "under a claim of right," and "continuous." Soley Wharf argues that its use of the passageway, as set forth in Tim Soley's affidavit, satisfies those three elements.

Soley Wharf has presented some evidence relating to each of the nine elements of adverse possession. Soley Wharf has alleged, through the affidavit of Tim Soley, that it has used the entire passageway as an owner would for more than twenty years. However, it is not clear from the record whether members of the public have used the passageway casually or whether they have used it

---

[3] The City argues that the visibility element is nearly impossible to meet in urban areas, citing to *Striefel*, 1999 ME 111, ¶ 11 n.5, 733 A.2d 984. In that footnote, the Law Court refers specifically to small encroachments that are "not readily apparent to the naked eye, but would require an on-site survey to discern." *Id.* (citing *Mannillo v. Gorski*, 54 N.J. 378, 255 A.2d 258, 263 (N.J. 1969) (no presumption of notice for "minor encroachments not exceeding several feet" in urban areas)). Here, the dispute is not over a few inches or feet; it is over the majority of an alleyway.

extensively enough to prevent Soley Wharf from proving exclusive possession. There are material facts in dispute as to the true extent of others' use of the passageway. There are also material facts in dispute as to fee ownership by a sovereign. Summary judgment for either party would thus be inappropriate at this time.

Accordingly, the City's motion for summary judgment is denied as to Count I of Soley Wharf's Complaint.

## III. Quiet Title

A quiet title action is a request for the court to determine the relative rights of a private claimant and the State regarding ownership of a specific property interest. *Welch v. State*, 2004 ME 84, ¶ 6, 853 A.2d 214. A person may bring a quiet title action if they have had uninterrupted possession of the property for at least four years. 14 M.R.S. § 6651. In this context, uninterrupted means "continuous and exclusive." *Levis v. Konitzky*, 2016 ME 167, ¶ 24, 151 A.3d 20. The quiet title statute "does not provide an independent basis for a claim of title," rather, it is a vehicle for relief "if the plaintiff in such an action provides the legal basis for that title." *Id.* Here, Soley Wharf claims title by adverse possession. As discussed above, material facts remain in dispute as to Soley Wharf's adverse possession claim. It would thus be inappropriate to grant summary judgment as to Soley Wharf's quiet title claim at this time.

Accordingly, the City's motion for summary judgment is denied as to Count II of Soley Wharf's Complaint.

10

**Entry is:**

Defendant City of Portland's Motion for Summary Judgment is Denied. The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 3/29/23

_____
John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 3/31/2023

11